# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HARTMAN, | : | Civil No. 1:21-CV-01735 |
| Plaintiff, | : | |
| v. | : | |
| GRATZ BOROUGH, ANGIE SITLINGER, *et al.* | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# **MEMORANDUM**

Pending before the court is a motion to dismiss Plaintiff John Hartman's ("Hartman") complaint filed by Defendants Gratz Borough and Angie Sitlinger, in her official capacity (collectively, "Defendants"). (Doc. 3.) Hartman brought the instant action to recover damages for an allegedly ongoing "riparian trespass" perpetuated upon his land, and for civil rights violations under 42 U.S.C. § 1983 purportedly stemming from the same underlying conduct. (Doc. 1-2, ¶¶ 14–15, 18–24, 26–28, 36–39.) Gratz Borough ("Gratz") and Angie Sitlinger have moved to dismiss all claims against them. (Doc. 3.) For the following reasons, the motion to dismiss will be granted in part and denied in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Hartman, through prior counsel, filed a three-count complaint against multiple defendants on September 9, 2021.[1] (Doc. 1-2.) This action was initially filed in the Dauphin County Court of Common Pleas but was removed to this court by Gratz and Angie Sitlinger on October 12, 2021. (Doc. 1.) The complaint sets forth three counts: Count I alleges a "riparian" trespass against all Defendants; Count II requests "injunctive and mandamus relief" from all Defendants; and Count III alleges violations of 42 U.S.C. § 1983 by Defendants Gratz Borough and Angie Sitlinger. (*Id.*)

In Count I, Hartman alleges that Defendants participated in a "riparian trespass" against him. (Doc. 1-2, ¶¶ 25–28.) Hartman states this conduct has occurred "since at least 2002 and [increased] with time" and resulted from improvement to Defendants' "upstream properties in a manner which dramatically reduced surface permeability and increased surface run-off volume and force." (*Id.* ¶¶ 13–14.) Hartman alleges that each Defendant is liable for "riparian trespass" as follows: he alleges "[e]ach of the individual Sitlingers participated in the trespass prior to the incorporation of the entities"; "Ange (sic) Sitlinger improperly used her influence as a member of Borough Counsel (sic)" to cause the Borough to

---

[1] In addition to the moving Defendants, Hartman sued Celin Sitlinger, Sitlinger Excavating LLC, Ruth Sitlinger T/B/D/A Twilight Limousine Service, and The Grand Entrance LLC. These defendants did not join in the motion to dismiss currently before the court.

2

complete the "water drainage project" that led to the increased trespass; "Celin Sitlinger performed or supervised the alterations which expanded the trespasses"; and all parties "acted with actual malice based on Hartman's exercise of free speech . . . and intentionally failed to request or require in the project the type of additional work at the Hartman property which would be required to prevent or at least mitigate the increased trespass." (*Id.* ¶¶ 16–23.)  Hartman argues that the purpose of the Sitlingers' improvement project was to divert storm water that was harming their properties onto his property instead.  (*Id.* ¶¶ 19, 21–22.)  He avers that these actions caused harm to his property "through flooding, erosion, and injury to access" and caused "substantial loss . . . including loss of farm income, expense to repair the property and ongoing damage."  (*Id.* ¶¶ 15, 18.)

In Count II, Hartman asserts a cause of action for "Injunctive and Mandamus Relief."  (Doc. 1-2, ¶¶ 29–32.)  The complaint states, "Immediate remedial measures are necessary to prevent further injury to Hartman"; "Hartman will move for such preliminary injunctive relief after preliminary discovery."  (*Id.*)  Hartman also states that he intends to seek mandamus relief.  (*Id.*)

Finally, in Count III, Hartman brings a claim under 42 U.S.C. § 1983 against Gratz Borough and Angie Sitlinger, in her official capacity as a "state actor." (Doc. 1-2, ¶¶ 34–35.)  Hartman alleges that Defendants "violated Hartman's constitutional free speech petition and equal protection rights by intentionally

3

causing the storm water project to increase an existing riparian trespass." (*Id.* ¶ 36.) Hartman asserts this "conduct was intentional and malicious," particularly in the case of Angie Sitlinger, who "combined malicious conduct toward Hartman with an abuse of office to secure private financial benefit for her family and family businesses." (*Id.* ¶¶ 38–39.) Hartman states that this "conduct is actionable under 42 U.S.C. § 1983 as a violation of Hartman's Constitutional rights." (*Id.* ¶ 37.) Hartman requests a variety of forms of relief, including "[i]njunctive relief in the form of a mandamus" involving "Angie Sitlinger's recusal from any and all future matters before the Borough related to the Sitlinger individuals and or businesses," and compensatory damages to rectify his "economic and reputational injury . . . as the result of the violation of his constitutional rights." (*Id.* ¶¶ 40–41.) Hartman does not elaborate on how his constitutional rights were allegedly infringed, or the specific actions Angie Sitlinger or Gratz took in causing the trespass or violating his rights.

Gratz and Angie Sitlinger filed the instant motion to dismiss on October 19, 2021, followed by a brief in support on the same day. (Docs. 3, 4.) On November 19, 2021, this court stayed all pending deadlines to provide Hartman time to retain new counsel. (Doc. 9.) Hartman retained new counsel, who filed a brief in opposition to the motion to dismiss on March 31, 2022. (Doc. 12.) Defendants

filed a reply brief on April 13, 2022.  (Doc. 30.)  Accordingly, the motion is ripe for disposition.

## JURISDICTION AND VENUE

The court has jurisdiction over Hartman's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) since this cause of action presents a federal question.  This court extends jurisdiction under 28 U.S.C. § 1367(a) to Hartman's claim of trespass brought pursuant to Pennsylvania common law since it originated from the same "case or controversy" as the jurisdiction-conferring claim.  This action is appropriate because both claims stem from the "common nucleus of operative fact".  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Venue is proper under 28 U.S.C. § 1391(b) because the alleged events giving rise to the complaint occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

(quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Defendants provide a variety of reasons why the claims against them fail. They argue that all of Hartman's claims fail to state a claim for which relief can be granted. (Doc. 4, p. 4, 7, 14–16.)[2] Defendants raise additional arguments particular to each count of the complaint. Specifically, Defendants argue that Hartman's trespass claim did not establish requisite liability under the "common-enemy rule" for water run-off, and that Defendants are immune from suit under Pennsylvania law.[3] (*Id.* at 9–13.) Defendants argue that Count II fails as a matter

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] The court applies the substantive law of Pennsylvania to this dispute since the court is exercising supplemental jurisdiction over the trespass claim. *Erie R.R. Co. v. Tompkins*, 304 U.S 64, 78 (1938); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). In addition, the court notes that neither party objected to the application of Pennsylvania law and both parties have cited to Pennsylvania law in their filings.

of law because there is no cause of action for a writ of mandamus or injunctive relief. (*Id.* at 13–14.) Lastly, Gratz asserts that the Section 1983 claim against it fails because Hartman attempts to bring a cause of action not available against a municipality. (*Id.* at 16–17.) Gratz argues that the only type of claim that can succeed against a municipality is a *Monell* claim, and since Hartman did not allege facts necessary to establish this claim, it must be dismissed. (*Id.*, further discussed in Doc. 30, p. 5–6, referencing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694–95 (1978).)

Hartman argues that his complaint alleged sufficient facts to satisfy the plausibility standard. (Doc. 24, p. 12–17.) He further asserts that neither Gratz nor Angie Sitlinger are immune from the trespass claim under Pennsylvania law. (*Id.* at 3–11.) Lastly, Hartman concedes that the Section 1983 claim against Gratz was not brought as a *Monell* claim, but asserts that the complaint nonetheless states sufficient facts to survive the motion to dismiss. (*Id.* at 14.)

### A. Hartman's Trespass Claim Against Angie Sitlinger Will Not Be Dismissed.

The type of trespass Hartman alleges occurred here pertains to storm water run-off entering onto and harming the land of another. This claim implicates the "common-enemy rule,"[4] concerning which Pennsylvania courts have held:

> the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior. Therefore, an owner of higher land is under no liability for damages to an owner of the lower land caused by water which naturally flows from the one level to the other.

*Youst v. Keck's Food Serv. Inc.*, 94 A.3d 1057, 1073 (Pa. Super. Ct. 2014) (internal citations omitted). This general rule notwithstanding, Pennsylvania courts provide that liability may be established under certain circumstances:

> an upper landowner is liable for the effects of surface water running off his property in two distinct circumstances: (1) where the landowner has diverted the water from its natural channel by artificial means; or (2) where the landowner has unreasonably or unnecessarily increased the quantity or changed the quality of water discharged upon his neighbor.

*Bretz v. Cent. Bucks Sch. Dist.*, 86 A.3d 306, 315–16 (Pa. Commw. Ct. 2014) (citing *LaForm v. Bethlehem Twp.*, 499 A.2d 1373, 1378 (Pa. 1985) (en banc)).

In a storm water common-enemy case involving a landowner defendant, the assessment of liability is relatively straightforward under Pennsylvania law. However, Pennsylvania appellate courts have adopted additional theories of

---

[4] "The law regards surface water as a common enemy which every proprietor must fight to get rid of as best he may." *LaForm v. Bethlehem Twp.*, 499 A.2d 1373, 1378 (Pa. 1985) (en banc).

liability from the Restatement Second of Torts in order to address liability when a defendant is not a landowner. In *Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1161 (Pa. Super. Ct. 2019), the Pennsylvania Superior Court examined liability in a common-enemy case for parties that did not currently own the offending land. The court relied upon portions of Sections 158 and 161(2) of the Restatement Second of Torts in concluding that a legal duty may be created when a party creates the tortious thing; when a party acquires legal interest in a tortious thing and fails to remove it; and when one intentionally fails to remove a thing from land in violation of a duty. *Id.* at 1160, 1167. Ultimately, the Superior Court found the original developing company that constructed the storm water management system could be liable for the continuing trespass it caused. *Id.* at 1167.

Similarly, the Pennsylvania Superior Court found in a physical trespass case that "[a] person who authorizes or directs another to trespass is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself." *Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*, 102 A.3d 501, 507 (Pa. Super. Ct. 2014) (citing *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (Pa. 1952)). This finding relies upon another portion of Section 158 of the Restatement Second of Torts—specifically, comment j. *Id.*

Based on this Pennsylvania precedent, and accepting all factual allegations as true, the court finds that Hartman has plausibly stated a legally cognizable claim

9

of trespass against Angie Sitlinger. The plausibility threshold is barely surpassed here. But the complaint includes sufficient factual allegations to state a legally cognizable claim of trespass upon which relief can be granted. (Doc. 1-2, ¶¶ 6–28.) The complaint provides Angie Sitlinger notice of "what the . . . claim is and the grounds upon which it rests". *Twombly*, 127 S. Ct. at 1964. Hartman alleges all defendants "improved their upstream properties in a manner which dramatically reduced surface permeability and increased surface run-off volume and force . . . [knowing] this was causing and would continue to cause harm to Hartman's property through flooding, erosion, and injury to access." (*Id.* ¶¶ 14, 15.) Hartman additionally states that Angie Sitlinger "improperly used her influence as a member of Borough Counsel to cause Gratz to undertake a water drainage project which would benefit the Sitlinger Defendants' businesses, and significantly increase the riparian trespass upon the Hartman property." (*Id.* ¶ 19.) Accepting all factual allegations as true, the claim against Angie Sitlinger for "riparian trespass" survives the dismissal motion.

Angie Sitlinger has argued high official immunity precludes her from liability on this claim.[5] However, that determination must be based on additional

---

[5] As an offshoot of sovereign immunity, an individual is granted "absolute privilege" if they qualify as a "high public official" from suits stemming from statements made or actions done while that official acted "within the scope" of their authority. *See Hall v. Kiger*, 795 A.2d 497, 499 (Pa. Commw. Ct. 2002) (citing *Matson v. Margiotti*, 88 A.2d 892, 895 (1952)). A borough councilperson qualifies as a "high public official." *Id.* at 500; *see also Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa. Commw. Ct. 2005).

factual information; specifically, what concrete actions Angie Sitlinger took to effectuate the alleged trespass and whether these actions were within the scope of her Borough employment. Any final decision on immunity is premature at this time. Accordingly, Angie Sitlinger's motion to dismiss the trespass claim against her will be denied.

### B. Hartman's Trespass Claim Against Gratz Borough Will Be Dismissed With Prejudice.

Although the factual allegations underlying Hartman's "riparian trespass" claim against Gratz are virtually the same as those forming the claim against Angie Sitlinger, the claim against Gratz fails because it is immune from suit under the Political Subdivision Tort Claims Act ("PSTCA"). 42 PA. CONST. STAT. §§ 8541 *et seq*.

The PSTCA bars all tort claims against an agency/municipality unless the tort action falls within one of the eight enumerated exceptions.[6] In order for a

---

[6] These exceptions are: (1) the operation of a motor vehicle in the possession or control of the local agency; (2) the care, custody, or control of personal property of others in the possession of the local agency; (3) the care, custody, or control of real property in the possession of the local agency; (4) a dangerous condition of trees, traffic signs, lights, or other traffic controls or street lighting systems under the care, custody, or control of the local agency; (5) a dangerous condition of the facilities of steam, sewer, water, gas, or electric systems owned by the local agency and located within the rights-of-way; (6) a dangerous condition of streets owned by the local agency under certain circumstances; (7) a dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency; and (8) the care, custody, or control of certain animals in the possession or control of a local agency. 42 PA. CONST. STAT. § 8542(b)(1)–(8).

lawsuit against an agency to survive,[7] the plaintiff must show: (1) the damages sought stem from a cause of action created by common law or statute that would otherwise allow for recovery were the defendant not subject to sovereign immunity; (2) the injury stemmed from the negligent acts of the agency or its employee (acting within the scope of her office or duties); and (3) the suit fits into one of the eight exceptions to immunity.  *Id.* § 8542; *see also Mitchell v. City of Phila.*, 596 A.2d 1205, 1207 (Pa. Commw. Ct. 1991) (describing what a plaintiff must show to successfully "maintain such an action").  Only if the plaintiff can prove all three elements will they be successful in their suit.

As a local government agency, Gratz Borough qualifies for absolute immunity under the PSTCA.  *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 240 (Pa. Commw. Ct. 2017); *see also DiMino by DiMino v. Borough of Pottstown*, 598 A.2d 357, 362 (Pa. Commw. Ct. 1991).  The court reaches this conclusion by applying the required three-step analysis.  Hartman satisfied the first element by bringing a claim pursuant to settled Pennsylvania common law.  Second, the court examined the complaint to determine if the harmful act allegedly stemmed from the negligence of the agency or its employee.  While much of

---

[7] The definition of a "local agency" has been interpreted to include cities, counties, townships, city authorities, municipal parking authorities, city authorities, various county offices, and many other types of organizations.  MICHAEL I. LEVIN, ET AL., MUNICIPAL LIABILITY IN PENNSYLVANIA 16–17 (Pennsylvania Bar Institute 7th ed. 2015).

Hartman's case remains unclear at this stage, it is manifestly evident that he has accused Angie Sitlinger and Gratz of taking action "with actual malice"; in the complaint he stated the "trespass was intentional and malicious." (Doc. 1-2, ¶¶ 23, 28.)  Since Hartman has persistently alleged Angie Sitlinger's acts were not negligent, Hartman failed to satisfy element two.

Therefore, with regards to Gratz, the analysis need not go further—Hartman has failed to plead an exception to the PSTCA, thus, Gratz's immunity remains intact.  Assuming *arguendo* that Angie Sitlinger's alleged actions were negligent—satisfying element two—it appears Hartman would also fail to satisfy element three.  Hartman has not established that any of the enumerated exceptions apply to this situation.  It is the plaintiff's burden to establish what exception to the PSTCA applies: if they fail to do so, the claim will not survive a motion to dismiss.  *See Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-0032, 2017 WL 3492542, at *12 (W.D. Pa. Aug. 15, 2017) (dismissing count because plaintiff failed to articulate exception under PSTCA); *see also Paden v. Wagner*, No. 3:16-CV-02565, 2017 WL 2390400, at *8 (M.D. Pa. Mar. 10, 2017) report and recommendation adopted by 2017 WL 2385346 at *1 (M.D. Pa. June 1, 2017) (same).  Based on a review of the allegations in Hartman's complaint, the court finds in any event that none of the exceptions apply.

Accordingly, Hartman's claim of trespass against Gratz Borough will be dismissed with prejudice.

**C.     Hartman's Claim for Mandamus and Injunctive Relief Will Be Dismissed for Failure to State a Claim.**

Injunctive relief and a writ of mandamus are two separate forms of relief available under federal law. A plaintiff may request injunctive relief as a remedy, but not as a separate cause of action; if a plaintiff does so, it can be dismissed. *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013). Similarly, a writ of mandamus is a "drastic remedy" and only available as an extraordinary discretionary measure. *In re Patenaude*, 210 F.3d 135, 140–41 (3d Cir. 2000). A plaintiff must show that he or she has a clear and indisputable right to relief and there are no other adequate remedies available. *Banks v. Equitable Gas Co.*, No. 1:CV-11-0511, 2011 WL 2149083, at *4 (M.D. Pa. Mar. 29, 2011).

In short, there are no independent causes of action for a writ of mandamus or injunctive relief. Hartman appears to have expressed his future intention to request preliminary injunctive relief, and possibly a writ of mandamus, from this court. Those remedies may be available to him if he meets his burden. However, because these forms of relief are improperly pled as a stand-alone count in the complaint,

Count II will be dismissed for failure to state a claim, as to all defendants—including those who did not join in the motion to dismiss.[8]

### D. Hartman's 42 U.S.C. § 1983 Claim Against Angie Sitlinger Will Be Dismissed Without Prejudice.

There are two elements a plaintiff must establish to bring a claim under Section 1983: "the violation of a right secured by the Constitution and laws of the United States," and a showing "that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005). Angie Sitlinger argues that the Section 1983 claim fails because Hartman does not satisfy the plausibility standard outlined in *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013), that a plaintiff must first "identify the exact contours of the underlying right said to have been violated and to then determine whether the plaintiff has alleged a deprivation of a constitutional right at all." (Doc. 4, p. 15.) She states, "It is not at all clear what constitutional rights Plaintiff believes he was deprived of. Plaintiff (who is represented) does not bother to identify it." (*Id.*) Angie Sitlinger further takes issue with the lack of

---

[8] *Sua sponte* dismissal of a claim, even in favor of defendants who did not file a motion to dismiss, is permitted when it is "apparent from the face of the complaint" that the plaintiff cannot state a claim upon which relief can be granted. *Giles v. Volvo Trucks North Am.*, 551 F. Supp. 2d 359, 369 (M.D. Pa. 2008) ("This practice promotes the prompt and efficient disposition of cases and protects valuable judicial resources by expediting the dismissal of cases that lack a shred of a valid claim.") Before *sua sponte* dismissal, the plaintiff must be on notice of the deficiency of their claim. *Id.* A motion to dismiss filed by some defendants can be sufficient notice. *Id.* Accordingly, the court finds Hartman was on sufficient notice of the deficiency of Claim II as to all defendants.

allegations of specific actions purportedly taken by either Defendant and argues that the claim against her fails because a viable Section 1983 claim must "demonstrate a defendant's personal involvement in the alleged wrongs." (*Id.* at 16 (citing *Flynn v. Dep't of Corr.*, 739 F. App'x 132, 140, n. 7 (3d Cir. 2018)).)

The court agrees. The complaint does not clearly provide Angie Sitlinger notice of "what the claim is and the grounds upon which it rests," *Twombly*, 127 S. Ct. at 1964, nor are the facts alleged more suggestive of illegality than legality, *Iqbal*, 556 U.S at 680. While Hartman attempts to supplement his complaint with additional factual support in the reply brief, *see* Doc. 24, p. 14–16,[9] those additional allegations cannot fix the inadequacies of the complaint itself. The court cannot ascertain which constitutional right(s) Hartman believes have been violated, nor can the court infer from the facts alleged how this violation (of unspecified variety) occurred. It is not this court's role to root out a cause of action that is not obviously stated in the complaint. *See DeShields v. Int'l Resort Props. Ltd.*, 463 Fed. Appx. 117, 120 (3d Cir. 2012) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) ("As we have observed in the past, judges are not like

---

[9] Plaintiff states that the rights violated were "retaliation for exercise of Speech and Petition rights, A Procedural Due Process violation for Taking without required process, Substantive due process violation for Taking without public purpose and without just compensation" (sic). (Doc. 24, p. 13.) Plaintiff also avers that "There is nothing ambiguous as to the property rights violated or the taking by flooding. Retaliatory animus (relating to Plaintiff's exercise of free speech rights was a supplemental basis for action does not remove the property/due process basis for action." (Punctuation original.) (*Id.*)

pigs, hunting for truffles buried in briefs."). Accordingly, Hartman's Section 1983 claim, Count III, against Angie Sitlinger is dismissed without prejudice.

### E. Hartman's 42 U.S.C. § 1983 Claim Against Gratz Borough Will Be Dismissed With Prejudice.

Gratz argues that the Section 1983 claim against it must be dismissed because Hartman has failed to state a claim that complies with *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694–95 (1978).

The Civil Rights Act of 1871 contained the predecessor of the cause of action codified in 42 U.S.C. § 1983: both allowed a plaintiff to bring a claim against a "person" who had violated their civil rights. *Id.* at 664, 690–92. Plaintiffs could not bring a claim against municipalities because municipalities were not considered a "person" subject to the statute. *Id.* However, in *Monell*, 436 U.S. 658, 694–95 (1978), the Supreme Court permitted municipal liability when the harm stemmed from the municipalities' "policy or custom." It has subsequently become evident that municipalities can <u>only</u> be liable under Section 1983 for a *Monell* claim; no other cause of action exists against a municipality. *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

Hartman did not plead any element of a *Monell* claim against Gratz. (Doc. 24, p. 14; Doc. 30-1.)[10] Because there are no other causes of action against municipalities available under Section 1983, any amendment of the complaint would be futile. Accordingly, Count III of the complaint against Gratz Borough will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. Specifically, Count I will be dismissed with prejudice as to Gratz Borough; Count II will be dismissed with prejudice as to all defendants; and Count III will be dismissed with prejudice as to Gratz Borough, but without prejudice as to Angie Sitlinger. Accordingly, Gratz Borough will be dismissed from this action. Hartman will be granted leave to file an amended complaint; however, should he decline to do so, the court will decline to exercise supplemental jurisdiction over the sole state law claim and will remand this action to the Dauphin County Court of Common Pleas. An appropriate order shall issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: July 6, 2022

---

[10] Hartman asserts that the claim against Gratz Borough is for the same "constitutional violations" that Angie Sitlinger allegedly committed, with no further attempt made to specify a cause of action. (Doc 24, p. 14.)